DOROTHY J. MANN *v.* DAVID C. MILLER
(AC 26091)

DiPentima, Gruendel and Foti, Js.

Argued December 6, 2005—officially released February 21, 2006

*James H. Lee*, for the appellant (plaintiff).

*Louise T. Truax*, with whom, on the brief, was *Mary T. Surette*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Dorothy J. Mann, appeals from the judgment of the trial court dissolving her marriage to the defendant, David C. Miller. On appeal, the plaintiff claims that the court improperly determined the division of marital assets by holding both parties jointly liable for a home equity loan. We affirm the judgment of the trial court.

The following facts are relevant to the disposition of the plaintiff's appeal. The parties were married on October 1, 1986, in Rhode Island. The following year they purchased a 2200 square foot ranch house in New Canaan for $877,000. To pay for the house, the parties used the profits from the sale of their previous house and secured a mortgage loan for the balance. At the time of purchase, they also acquired, but did not immediately draw on, a home equity line of credit in the amount of $225,000.

In 1998, the parties began renovations on their house; the defendant made all the plans himself and became the general contractor. The plans called for demolishing their ranch house and replacing it with a 3650 square

foot American shingle style home at a cost of $775,000.[1] To finance the new structure, the parties each agreed to pay 50 percent of the costs.[2] The plaintiff used funds from her savings, while the defendant drew on the home equity loan in addition to using funds from his savings. The defendant moved the $225,000 home equity loan into his brokerage account and began paying the debt service on that loan himself. At the time of trial, the balance owed on the home equity loan was $184,000.

The plaintiff filed for dissolution of her marriage to the defendant on May 8, 2003, on the ground of irretrievable breakdown. On September 9, 2004, the court rendered judgment dissolving the marriage and issued an order regarding property division.

The court ordered the house to be sold and the proceeds disposed of as follows: "The net proceeds remaining *after payment of mortgages*, taxes, commissions, and closing costs shall next be applied to the payment of the defendant's liabilities . . . ." (Emphasis added).[3]

On September 22, 2004, the plaintiff filed several postjudgment motions, including a motion for exclusive possession of the marital home. The court issued a

---

[1] During construction of the new house, from 2001 to 2003, the parties resided in a rental cottage.

[2] The plaintiff reduced her share of paying joint expenses to 33 percent in 2001, 25 percent in 2002 and 10 percent in 2003.

[3] Paragraph six of the memorandum of decision states: "The real property located at 454 Country Club Road West, New Canaan, Connecticut is ordered sold. The parties shall list the premises immediately by selecting a real estate broker. The parties shall attempt to agree upon a listing price. The court retains jurisdiction of this order as allowed by *Roberts* v. *Roberts*, 32 Conn. App. 465 [629 A.2d 1160 (1993)] to issue any further orders in effecting completion of the sale. The net proceeds remaining after payment of mortgages, taxes, commissions, and closing costs shall next be applied to the payment of the defendant's liabilities (the plaintiff having listed none) and the remaining proceeds shall be divided equally with each party receiving 50 [percent]."

memorandum of decision on November 23, 2004, granting the plaintiff's motion for exclusive possession and ordering each party to be responsible for 50 percent of the mortgage installment payments beginning January 1, 2005. The plaintiff filed this appeal on December 10, 2004.

We set forth the standard of review for financial orders in a dissolution action. In fashioning its financial orders, the court has broad discretion, and "[j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the questions of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Internal quotation marks omitted.) *Casey* v. *Casey*, 82 Conn. App. 378, 383, 844 A.2d 250 (2004). That standard of review "reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." Id.

"In distributing the assets of the marital estate, the court is required by [General Statutes] § 46b-81 to consider the estate of each of the parties." (Internal quotation marks omitted.) *Gilbert* v. *Gilbert*, 73 Conn. App. 473, 484–85, 808 A.2d 688 (2002). General Statutes § 46b-81 (a) provides in relevant part: "At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . ." Courts are not required to "ritualistically recite the criteria they considered, nor are they bound to any specific formula respecting the weight to be accorded each factor" in determining the distribution of marital assets. *Casey* v. *Casey*, supra, 82 Conn. App. 384.

The plaintiff argues that the court improperly ordered that the home equity loan be paid out of the net proceeds from the sale of the home as a joint obligation. Specifically, the plaintiff argues that because the equity loan funded part of the defendant's contribution to the new house, it was not a joint liability but a liability of the defendant alone. We are not persuaded.

The court properly made specific factual findings as to the assets and liabilities each party brought to the marriage and certain other relevant factors existing at the time of the dissolution, all of which are supported by the evidence. At the time of dissolution, the court ordered the plaintiff and the defendant each to retain their personal assets worth $494,273 and $401,934.71, respectively. The court also ordered the marital residence to be sold and found it to be worth approximately $2 million. Further, the court heard testimony from both parties regarding the opening of the $225,000 home equity line in 1987. The court was aware that the funds were deposited into the defendant's brokerage account and that the defendant initially had paid down the outstanding amount on the loan without contribution from the plaintiff. Applying those factual findings to the statutory considerations set forth in § 46b-81, we conclude that the financial orders were logically consistent with the facts found and that the court reasonably could have concluded as it did.

In support of her argument, the plaintiff asserts that the facts in this case are substantially similar to those in *Ehrenkranz* v. *Ehrenkranz*, 2 Conn App. 416, 479 A.2d 826 (1984), and therefore *Ehrenkranz* controls. We do not agree.

In *Ehrenkranz*, the trial court awarded the plaintiff wife in a dissolution proceeding the marital residence and ordered the defendant husband to pay off the mortgage on the property. Id., 418. The court further ordered

the defendant to pay the plaintiff an additional lump sum alimony payment of $115,939.75, representing half of the equity in the defendant's assets. Id. In determining the defendant's equity, however, the court included as an asset the value of the family home, which it already had awarded, free of the mortgage, to the plaintiff. Id., 418–20. The court thus counted the value of the home twice, resulting in an award to the plaintiff of $64,060.25 more than the defendant's net worth. Id., 420. As such, the defendant was left with a negative net worth. Id. This court reversed the judgment, finding that the "underpinning of the decision [was] not sound." Id., 423.

The mathematical error that occurred in *Ehrenkrantz* is not present in this case. Indeed, the court did not count the home equity loan twice, but instead ordered the loan paid out of the net proceeds from the sale of the home. The court treated the home equity loan in the same manner as it were taken in 1987 as a joint obligation of the parties. We thus conclude that the court properly considered all of the required factors in making orders concerning the distribution of marital property in this case.

The judgment is affirmed.

In this opinion the other judges concurred.